(No. 3497— )

RONDA R. WEBER, WIDOW OF HERBERT WEBER, DECEASED, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 13, 1947.*

PAUL D. PERONA and WILLIAM ZWANZIG, for claimant.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR and C. ARTHUR NEBEL, Assistant Attorneys General, for respondent.

ECKERT, C. J.

On September 1, 1939, Herbert Weber, employed as an attendant at the Manteno State Hospital, contracted typhoid fever in the course of his employment. In the original complaint, filed in this case by Herbert Weber in his lifetime, it was alleged that as a result of the typhoid fever he had been unable to carry on his usual and customary duties, and had suffered a severe kidney infection. He sought an award for medical and hospital services, total and permanent disability, and life pension.

Herbert Weber died November 7, 1946, and thereafter, by leave of court, an amended complaint was filed by the claimant, Ronda R. Weber, as widow of Herbert Weber, deceased, alleging that she was married to Her-

bert Weber on June 30, 1932 and that decedent left surviving, as his only heirs, Ronda R. Weber, his widow, and Geoffrey Lewis Weber, his son, who was born on January 31, 1944. The amended complaint alleged that the death was the direct and proximate result of the typhoid fever contracted while Weber was employed by the respondent.

When the illness was contracted, decedent and respondent were operating under the provisions of the Workmen's Compensation Act of this State, and notice of the illness and claim for compensation were made within the time provided by the act. A typhoid fever epidemic existed at the Manteno State Hospital from July 10, 1939 to December 10, 1939. Typhoid fever contracted during this epidemic constitutes an accidental injury which is compensable under the Workmen's Compensation Act. *(Ade* vs. *State,* 13 C.C.R. 1).

Decedent's annual earnings for the year next preceding his illness were $672.00, making an average weekly wage of $12.92. Since he had one child under sixteen years of age living at the time of his death, his compensation rate is the minimum of $11.00 per week. The illness having occurred subsequent to July 1, 1939, this must be increased 10%, making a compensation rate of $12.10. Decedent was totally incapacitated from September 1, 1939, to November 6, 1939, a period of nine and two-sevenths weeks. During that time he received for non-productive work the sum of $127.40, which must be deducted from any award entered in this case.

Herbert Weber, testifying on his own behalf, at the original hearing, stated that on August 29, 1939, he reported to Dr. Spinka, Staff Physician at the Manteno State Hospital, that he was suffering from an abdominal disorder; that Dr. Spinka advised him to go to his room,

and that if he did not feel better by morning, and needed medical or hospital services, to secure them wherever available, because the hospital at the institution was already filled with typhoid fever patients. The following day he went to the Coleman Clinic at Canton, Illinois, where Dr. Bennett sent him to the Graham Hospital. Weber remained there from August 30th to October 6th, 1939. The total charges paid to the hospital for that period amounted to $128.70.

Weber further testified that on February 27, 1940, he had a relapse, and returned to the Graham Hospital where he was found to be a typhoid carrier. He remained at the hospital from February 27th, to March 31st, 1940, and paid total hospital charges for that period of $122.94. Because his condition did not improve, he was subsequently taken to St. Luke's Hospital in Chicago for the removal of one kidney. He remained there from November 8th to December 6th, 1942, at a total expense of $471.54. From December 23, 1942, to January 17, 1943, Weber was again treated at the Graham Hospital, at Canton, at a total expense of $209.10, and from January 30, 1946, until March 10, 1946, at a total expense of $416.00.

Weber also testified that he had paid the following medical expenses: Dr. E. P. Coleman $226.50; Dr. Harry Culver, $285.00; Dr. Daniel K. Hur, $54.00, or a total of $565.50. Additional expenses incurred by Weber just prior to his death were as follows:

```
Graham Hospital .....................................$34.48
Prescriptions and Medicines.................................... 12.00
Medical services, Coleman Clinic................................ 54.00
```

Decedent further testified that for a period of four years after his original illness, except during the several periods of hospitalization, he worked as a guard at the

Elwood Ordnance Plant at a salary at $34.00 per week, plus over-time pay. He stated, however, that he had been unable to do any work since October, 1945.

Dr. David A. Bennett, testifying on behalf of Weber, stated that he examined Weber on August 30, 1939, and found that he had typhoid fever; that he treated him at the Graham Hospital from August 30, to October 6; that on October 24, 1939, Weber was found to be negative of typhoid fever, but that he again saw Weber on February 15, 1940, and Weber was then running pus cells in his urine. An intravenous pyelogram was done at that time, and on March 1st, 1940, a blood test showed positive typhoid.

Dr. Bennett testified that on May 20, 1940, a specimen of urine showed typhoid bacilli present, a condition which remained throughout 1940, and for which Weber was continuously treated. Tests made on November 1st, 1941, November 8th, 1941, and November 17, 1941, showed Weber still a typhoid carrier in the urine. On November 18, 1941, and on February 15, 1942, a cystoscopy was done at the hospital. Typhoid was still present in the urinary tract.

Dr. Bennett testified that in December, 1942, Weber's right kidney had become abscessed, the infection in the left kidney having infected the right kidney, developed stones, and so damaged the right kidney as to necessitate its removal. On January 30, 1946, Dr. Bennett found stones in the left kidney, one of which was impacted in the left ureter, causing uremia. The stone was removed at that time, but other stones still remained in the left kidny, which had only a limited function.

Dr. Bennett stated, at that time, that the original typhoid infection caused Weber to become a typhoid carrier; that the resulting infection in the kidney would be

the cause of his ultimate death; that the typhoid had so infected the remaining kidney that Weber's life expectancy was definitely lessened. Dr. Bennett stated that claimant was then totally incapacitated, and that his condition was permanent. From the proof submitted on hearing, following the death of Herbert Weber, it appears that his death was the direct result of the original typhoid fever infection, being caused by uremia, as Dr. Bennett predicted.

Claimant is therefore entitled to an award on account of the death of Herbert Weber, under Section 7a of the Workmen's Compensation Act of this state, in the amount of $3,038.00, less the sum of $127.40 paid to decedent for non-productive work, or the sum of $2,910.60.

Marguerite Corso was employed to take and transcribe the evidence at the hearings before Commissioner Jenkins. Charges in the amount of $57.60 were incurred for these services, which charges are fair, reasonable, and customary.

An award is therefore entered on account of medical, hospital and nursing services in the sum of $2,014.26 payable forthwith as follows:

| | |
|---|---|
| Graham Hospital, Canton, Illinois | $911.22 |
| St. Luke's Hospital, Chicago, Ill. | 471.54 |
| Dr. E. P. Coleman | 226.50 |
| Dr. Harry Culver | 285.00 |
| Dr. Daniel K. Hur | 54.00 |
| Coleman Clinic, Canton, Ill. | 54.00 |
| Ronda R. Weber, reimbursement for purchasing prescriptions and medicines | 12.00 |

An award is entered in favor of Marguerite Corso in the amount of $57.60, payable forthwith.

An award is entered in favor of Ronda R. Weber, widow of Herbert Weber in the amount of $2,910.60 to be paid to her as follows:

$ 612.71, which had accrued under the terms of an award made to the decedent immediately prior to his death on account of permanent disability, and which is payable forthwith;

326.70, which has accrued since the death, and which is payable forthwith;

1,971.19, which is payable in weekly installments of $12.10 per week, beginning on the 16th day of May, 1947 for a period of 162 weeks, with an additional final payment of $10.99.

All future payments being subject to the terms and conditions of the Workmen's Compensation Act of Illinois, jurisdiction of this cause is specifically reserved for the entry of such further orders as may from time to time be necessary.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."